**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| CITY OF MEMPHIS, | ) | |
| | ) | Misc. Action No. 3:26-mc-443-JFA |
| Movant, | ) | |
| | ) | |
| v. | ) | Related to *RowVaughn Wells v. City* |
| | ) | *of Memphis, et al.*, No. 2:23-cv- |
| GEOFFREY ALPERT, Ph.D., | ) | 02224-SHL-atc (W.D. Tenn.) |
| | ) | |
| Respondent. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA *DUCES TECUM***

Movant City of Memphis (the "City") respectfully submits this Memorandum of Law in Support of its Motion to Compel Geoffrey Alpert, Ph.D. ("Dr. Alpert") to comply with a Rule 45 subpoena *duces tecum* (the "Subpoena") served upon him in connection with the underlying action, *RowVaughn Wells v. City of Memphis, et al.*, No. 2:23-cv-02224-SHL-atc (W.D. Tenn.) (the "Underlying Action"), and states as follows:

**I.    BACKGROUND**

The Underlying Action against the City of Memphis arose out of the death of a motorist in Memphis. RowVaughn Wells, as executor of the estate, sued the City of Memphis. Dr. Alpert was retained by the plaintiff in the Underlying Action to opine on police policies, practices, and customs in connection with her *Monell* claim. Dr. Alpert is a Professor of Criminology and Criminal Justice at the University of South Carolina, located in Columbia, South Carolina.

On April 14, 2026, the City served a Subpoena on Dr. Alpert, commanding him to appear for a deposition on April 17, 2026 in Columbia, South Carolina—a location within 100 miles of

1

Dr. Alpert's residence and workplace—and further commanding the production of documents as specified in Exhibit A to the Subpoena, to be brought with him to his deposition. *See* Subpoena to Dr. Alpert, attached as Exhibit 1. The Subpoena was issued from the United States District Court for the Western District of Tennessee, the court in which the Underlying Action is pending.

Exhibit A to the Subpoena requested documents in several substantive categories spanning expert opinions and bases, communications relating to opinions, prior testimony and reports, compensation and bias, and reliability and methodology. Specifically, the Subpoena commanded Dr. Alpert to produce:

1. all publications and articles cited in his Expert Report dated April 3, 2026;
2. all facts and data used to support the Expert Report;
3. any exhibit, chart, or demonstrative he intends to use to support his report at trial;
4. all communications with Plaintiff's counsel relating to compensation, scheduling, facts or data provided by attorneys, and assumptions relied upon in forming opinions;
5. communications with any other person relating to opinions in this matter;
6. all expert reports submitted by Dr. Alpert from the past five years involving police practices, use of force, pursuits, and/or police culture;
7. transcripts of all testimony in the cases listed on Exhibit C to the Expert Report;
8. fee agreements and billing records in this matter, including retainer agreements, invoices, and records of payments received;
9. documents sufficient to show income derived from litigation consulting over the past three years;
10. documents reflecting testing, validation, peer review, or standards underlying the methodology applied in the Expert Report; and
11. any other documents actually considered in forming or modifying opinions in this matter.

*See* Exhibit 1, at 4.

Dr. Alpert appeared for his deposition on April 17, 2026, but produced no documents

2

whatsoever.[1] *See* Geoffrey Alpert Deposition Transcript ("Alpert Tr."), attached as Exhibit 2, at 19:20-24. His testimony on the record confirmed his wholesale noncompliance with the document production obligations of the Subpoena. *Id.* at 19:20–22:6. When asked whether he brought any documents responsive to the Subpoena, he testified: "No, and I'm happy to go through the list and explain why." *Id.* at 21:22–22:6. Counsel for the City then confirmed: "You didn't bring anything on this list," and Dr. Alpert responded, "That's correct." *Id.* at 22:4-6.

Dr. Alpert's category-by-category testimony regarding his failure to produce documents is revealing. As to publications and articles cited in his report, he testified that he did not retain or save them, explaining that he "would look up and use" the articles but "didn't keep PDFs of them." Alpert Tr., at 19:25–20:20. He conceded that through plaintiff's counsel, only three documents were provided, out of the many citations in his report. *Id.* at 19:25–21:6. As to facts and data supporting the report, he testified he "had no idea what that meant" and brought nothing. *Id.* at 21:7-24.

Regarding communications with plaintiff's counsel, Dr. Alpert testified that he routinely deletes all emails, stating, "I delete all my emails when they're of no use." Alpert Tr., at 23:7-12, 24:9–25:4, 25:12-19. He did not produce any written communications regarding compensation, scheduling, facts provided by counsel, or assumptions he relied upon. *Id.* He testified he "certainly" does not keep text messages. *Id.* at 132:10-14. Counsel for plaintiff produced a limited set of email communications with Dr. Alpert bearing Bates numbers, but Dr. Alpert confirmed he did not provide those to plaintiff's counsel for production; rather, plaintiff's counsel produced

---

[1] On April 15, 2026, counsel for Plaintiff in the Underlying Action produced three documents responsive to Request No. 1 in the Subpoena, "on behalf of Geoffrey Alpert." *See* April 15, 2026 Email, attached as Exhibit 3. On April 28, 2026, counsel for Plaintiff produced an additional document responsive to Request No. 1. *See* April 28, 2026 Email, attached as Exhibit 4, at 1.

3

them on their own initiative.[2] Alpert Tr., at 127:16–128:9; *see also* supra n. 1.

As to prior expert reports from the past five years, Dr. Alpert's testimony was particularly striking. He testified that he does not keep copies of old expert reports: "When the cases are settled, yeah, I hit delete." Alpert Tr., at 31:8-15. He also claimed he could not produce them without "permission from the other attorneys" who retained him, regardless of whether the reports were previously publicly disclosed or not. *Id.* at 29:24–30:7. When pressed about reports he had authored for the law firm Romanucci and Blandin—the very firm representing plaintiff in the Underlying Action—he acknowledged writing reports in multiple cases but claimed he did not have copies. Counsel for plaintiff, when asked to provide Dr. Alpert's prior reports, responded only, "We'll consider it and get back to you." *Id.* at 33:5–34:25. Similarly, Dr. Alpert testified he does not keep copies of deposition transcripts or trial testimony. *Id.* at 36:4-9.

As to fee agreements and billing records, Dr. Alpert could not produce the original retainer agreement from when he was engaged in 2023, testifying that he "didn't get one" at that time and that a fee agreement was not executed until April 3, 2026—the day of the expert disclosure deadline. Alpert Tr., at 105:18–106:20.[3] He testified he could not find an invoice he believed he had sent "years ago," stating it "wasn't where it was supposed to be on my computer." *Id.* at 25:16–26:6, 108:1-7. He acknowledged he "did not look in [his] bank" for payment records and would need to "make a special effort" to retrieve them. *Id.* at 37:9-16.

As to reliability and methodology documents, Dr. Alpert testified that he did not bring any

---

[2] These emails were produced by plaintiff's counsel pursuant to the City's Request for Production No. 30. To date, plaintiff's production with respect to this Request remains deficient. Plaintiff has not completed production of all responsive, non-privileged communications with Dr. Alpert, nor has plaintiff produced any communications with any other of her seven experts.

[3] The plaintiff's expert disclosure deadline in the Underlying Action was April 3, 2026. Counsel for the City misspoke in the cited portion of the deposition transcript.

such materials because "the methodology [is explained] in my report, and I included citations." *Id.* at 43:3-14. Only three documents were provided through plaintiff's counsel. *See supra* n.1.

At no point during the deposition or at any time before or after did Dr. Alpert serve written objections to the Subpoena as contemplated by Rule 45(d)(2)(B). Dr. Alpert confirmed he is not represented by counsel. No privilege log was provided. No motion to quash or modify the Subpoena has been filed.

During the deposition, counsel for the City placed plaintiff's counsel and Dr. Alpert on notice that the City intended to seek judicial relief: "We will be taking this up with the court." Alpert Tr., at 35:1-2. Counsel for the City thereafter notified plaintiff's counsel via email that it intended to enforce the Subpoena. Exhibit 4, at 2–3, 6.

## II.     LEGAL STANDARDS

### A.     Jurisdiction and Venue.

Federal Rule of Civil Procedure 45(d)(2)(B)(i) provides that when a person subject to a subpoena objects to the production of documents, "the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). Both Rule 37 and Rule 45 require that when a party seeks to compel a non-party's compliance with a subpoena *duces tecum*, the motion must be filed in the district where the documents are located—not in the district where the subpoena was issued. *See ChromaDex, Inc. v. Elysium Health, Inc.*, No. 2:21-mc-00010, ECF No. 15, at 2 (D.S.C. Mar. 8, 2021) (citing *Koenig v. Johnson*, 2020 WL 635772, at *2 (D.S.C. Feb. 11, 2020)).

The Subpoena commanded production at 1501 Main Street, Suite 501, Columbia, South Carolina, which is within the District of South Carolina. Dr. Alpert resides and is employed in Columbia, South Carolina, squarely within this judicial district. Accordingly, this Court is the proper forum for this Motion as the court for the district where compliance is required.

5

**B.       Scope of Discovery Under Rule 45.**

A party to litigation may issue a subpoena for the production of discoverable material to a non-party. Fed. R. Civ. P. 45. "The scope of discovery for a nonparty litigant under a subpoena *duces tecum* issued pursuant to Rule 45 is the same as the scope of a discovery request made upon a party to the action under Rule 26." *Alston v. DIRECTV, Inc.*, 2017 WL 1665418, at *2 (D.S.C. May 3, 2017). In other words, the scope of discovery allowed under a Rule 45 subpoena is equivalent to the scope of discovery allowed under Rule 26. *HDSherer LLC v. Nat'l Molecular Testing Corp.*, 292 F.R.D. 305, 308 (D.S.C. 2013).

Federal Rule of Civil Procedure 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The scope of discovery permitted by Rule 26 is designed to provide a party with information reasonably necessary to afford a fair opportunity to develop its case." *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018). Relevancy is construed broadly. "Information sought is relevant if it 'bears on [or] reasonably could lead to another matter that could bear on, any issue that is in or may be in the case.'" *Ferira v. State Farm Fire & Cas. Co.*, 2018 WL 3032554, at *1 (D.S.C. June 18, 2018) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

**C.       Motions to Compel Under Rule 45.**

Rule 45 allows persons subject to subpoenas *duces tecum* to object to production by serving a written objection within fourteen days after the subpoena is served or the time specified for compliance, whichever is earlier. Fed. R. Civ. P. 45(d)(2)(B). "A failure to object within the fourteen-day period usually results in waiver of the contested issue." 9A Fed. Prac. & Proc. Civ. § 2463 (3d ed.). If a non-party fails to comply with or timely objects to a subpoena, the issuing party may file a motion to compel in the court for the district where compliance is required. Fed. R. Civ.

6

P. 45(d)(2)(B)(i).

Upon the filing of a motion to compel, the district court may order the non-party to comply with the subpoena, though in doing so the court must protect the non-party "from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). "[T]he burden of proof is with the party objecting to the discovery to establish that the challenged production should not be permitted." *HDSherer*, 292 F.R.D. at 308.

District courts are afforded broad discretion in managing discovery, including motions to compel. *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) ("This Court affords a district court substantial discretion in managing discovery and reviews the denial or granting of a motion to compel discovery for abuse of discretion."). *See also Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995) ("The scope and conduct of discovery are within the sound discretion of the district court.").

### D.    Local Rule 37.01 Timeliness Requirements.

Local Civil Rule 37.01 of the United States District Court for the District of South Carolina provides that "[m]otions to compel discovery must be filed within twenty-one (21) days after receipt of the discovery response to which the motion to compel is directed or, where no response has been received, within twenty-one (21) days after the response was due." Local Civ. R. 37.01 (D.S.C.). Here, no discovery response or objection has been received from Dr. Alpert, and the response was due at or before the deposition on April 17, 2026. This Motion is timely filed within twenty-one days of the date the response was due.

### III.    ARGUMENT

### A.    The Subpoena Was Valid, Properly Issued, and Properly Served.

The Subpoena satisfies all requirements of Federal Rule of Civil Procedure 45. It was issued from the United States District Court for the Western District of Tennessee, the court in

which the Underlying Action is pending, as required by Rule 45(a)(2). It was signed by an attorney authorized to practice in the issuing court and representing the City of Memphis, as required by Rule 45(a)(3).

The Subpoena properly commanded Dr. Alpert to appear for a deposition at a location within 100 miles of Dr. Alpert's residence and place of employment at the University of South Carolina, as required by Rule 45(c)(1)(A). The Subpoena commanded the production of documents specified in Exhibit A and included the text of Rule 45(c), (d), (e), and (g), as required by the form.

Plaintiff's counsel accepted service of the subpoena on behalf of Dr. Alpert. Exhibit 4, at 12–13. Additionally, Dr. Alpert personally received the Subpoena. At his deposition, he confirmed: "You received this subpoena, sir?" "Yes, ma'am." Alpert Tr., at 18:25–19:2. There is no dispute that the Subpoena was properly served.

**B.      Dr. Alpert Has Failed to Comply with the Subpoena Without Adequate Legal Justification.**

Dr. Alpert's noncompliance with the Subpoena is total and without legal excuse. He appeared for his deposition on April 17, 2026, but brought no responsive documents. His deposition testimony reveals that his failure to comply was not the product of a good-faith effort to respond, but rather the consequence of indifference to his legal obligations.

Dr. Alpert's proffered justifications for noncompliance fail as a matter of law. His assertion that he did not retain cited publications because they are "publicly available" and "easily available to any of you" does not excuse compliance with the Subpoena. Courts in this District have squarely rejected the argument that publicly available information excuses a subpoena recipient from compliance. *See ChromaDex*, ECF No. 15, at 7–8. (rejecting argument that party must exhaust publicly available sources before compelling production and finding no authority supporting such

8

an assertion). The fact that a document might be publicly available does not render a subpoena request for that document moot.

Similarly, Dr. Alpert's claim that he "had no idea" what the request for "all facts and data" meant does not constitute an objection, and his confusion does not excuse noncompliance.[4] Nor does his blanket claim that he deletes all emails, does not keep prior reports, and does not retain communications constitute a valid defense to the Subpoena. A person subject to a subpoena is obligated to make a reasonable effort to locate and produce responsive documents. Dr. Alpert's testimony reveals that he made little or no effort to search for responsive materials. *See, e.g.*, Alpert Tr., at 19:25–21:24; *see also supra* Section I.

Dr. Alpert's claim that he requires "permission from the other attorneys" before producing his own prior expert reports is similarly unavailing. Courts have recognized that prior expert reports are discoverable where they are relevant to the general subject matter of the case and do not place an undue burden upon the individual from whom the information is sought. *See, e.g.*, *Sherrod v. Williams*, 2018 WL 8805194, at *1 (S.D. Ohio, 2018). The Subpoena was directed to Dr. Alpert pursuant to Rule 45, which authorizes the compulsion of documents from non-parties such as expert witnesses. As a non-party to the Underlying Action, Dr. Alpert is independently obligated to comply with a lawfully issued subpoena. He cannot delegate his compliance obligations to third parties or make his compliance contingent on the cooperation of others. In *Sherrod*, the court found that where an expert witness indicated that his prior reports were stored electronically and easily accessible, the burden upon the expert to produce those reports was "very low." *Id.* at *2. Similarly here, Dr. Alpert has identified no basis for concluding that production of

---

[4] It seems highly unlikely that Dr. Alpert—who gives expert testimony frequently—is not familiar with the standards set forth in Rule 26 related to "facts or data" considered in forming his opinions.

his prior reports would impose any meaningful burden. To the extent that retaining counsel in prior matters also possesses copies of these reports, that fact only further demonstrates the minimal burden of production—it does not excuse Dr. Alpert from his independent obligation to comply with the Subpoena.

Dr. Alpert has been an expert witness in over fifty cases in the last four years alone. He is very familiar with the requirements of Rule 26. He is also aware that documents such as retainer agreements, communications related to compensation, and the references supporting his expert opinion are readily discoverable, and thus, they should be preserved. Consequently, the City believes it is highly unlikely that he would destroy these documents, as they would be critical in surviving a *Daubert* motion. Therefore, this Motion seeks to compel compliance with *all* requests set forth in Exhibit A to the Subpoena.

### C.     No Valid Objection, Privilege, or Protection Has Been Asserted to Excuse the Wholesale Noncompliance.

Dr. Alpert never served written objections to the Subpoena as required by Rule 45(d)(2)(B). Rule 45 requires that any objection must be served "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). A failure to serve timely written objections "usually results in waiver of the contested issue." 9A Charles Alan Wright et al., Federal Practice and Procedure § 2463 (3d ed. 2016). Because Dr. Alpert failed to serve any written objections, he has waived any grounds he might otherwise have asserted to resist compliance.

Furthermore, Dr. Alpert has never asserted any privilege or work-product protection over the documents requested. He confirmed at his deposition that he is not represented by counsel. He has not produced a privilege log as required by Rule 45(e)(2)(A) for any documents withheld on a claim of privilege or work-product protection. In the absence of any assertion of privilege, no basis

exists for withholding responsive materials.

During the deposition, plaintiff's counsel interposed objections suggesting that certain communications between Dr. Alpert and plaintiff's counsel might be protected by work-product privilege. However, as this Court has recognized, the scope of discovery for a non-party under Rule 45 is coextensive with Rule 26. Rule 26(b)(4)(C) governs discovery of communications between a party's attorney and expert witnesses, creating a limited protection. But Rule 26(b)(4)(C) does not shield from disclosure communications relating to the expert's compensation, nor does it protect facts or data that the party's attorney provided and that the expert considered in forming opinions, or assumptions that the party's attorney provided and that the expert relied on. *See* Fed. R. Civ. P. 26(b)(4)(C)(i)–(iii). The Subpoena's requests for communications relating to compensation, scheduling, facts, data, and assumptions are directed at precisely the categories of information that are not protected even under the limited work-product shield of Rule 26(b)(4)(C). Counsel for the City made this point clear during the deposition.

**D.      The City of Memphis Is Entitled to an Order Compelling Production.**

The documents sought by the Subpoena are clearly relevant to the Underlying Action and proportional to the needs of the case. As plaintiff's alleged expert on police practices and customs, Dr. Alpert's opinions are central to the claims at issue.

The City is entitled to the documents requested in the Subpoena in order to (a) test the reliability and methodology of Dr. Alpert's expert opinions as required by *Daubert* and Federal Rule of Evidence 702; (b) evaluate the completeness of Dr. Alpert's materials reviewed list—an issue raised at the deposition, where Dr. Alpert could not confirm what he reviewed; (c) identify potential inconsistencies in Dr. Alpert's prior reports; (d) evaluate bias through his compensation history and pattern of testimony; and (e) prepare for cross-examination and potential challenges to his qualifications and opinions.

Particularly concerning is Dr. Alpert's admission that the list of materials "provided" to him, which was disclosed as part of the Rule 26(a)(2) expert disclosure, may be inaccurate because he did not actually review all materials on the list. He could not articulate which specific documents he reviewed and which he did not. This underscores the necessity of obtaining the underlying documents to evaluate the true basis for his opinions.

As the Fourth Circuit has recognized, "the discovery rules are given 'a broad and liberal treatment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983 (4th Cir. 1992) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). The documents requested in the Subpoena fall squarely within the scope of discoverable material. They are neither privileged nor protected, and no burden defense has been raised. The City is entitled to an order compelling their production.

### E.     In the Alternative, Exceptional Circumstances Warrant Transfer to the Issuing Court Under Rule 45(f)

Should this Court determine that resolution of this Motion requires familiarity with the Underlying Action, the City respectfully requests, in the alternative, that this Court transfer this Motion to the United States District Court for the Western District of Tennessee, the issuing court, pursuant to Federal Rule of Civil Procedure 45(f). Rule 45(f) provides that the compliance court may transfer a subpoena-related motion to the issuing court when "exceptional circumstances" make transfer appropriate. Fed. R. Civ. P. 45(f). The Advisory Committee Notes to Rule 45(f) explain that "[i]n some circumstances . . . the interests of the issuing court" may give rise to exceptional circumstances warranting transfer. Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. Four features of this case, considered together, satisfy the exceptional circumstances standard.

1.    The Subpoena Dispute Is Intertwined with the Rule 26(b)(4) Expert Discovery Framework.

The documents sought by the Subpoena are not ordinary third-party records; they are expert discovery materials that fall within the specialized framework of Rule 26(a)(2) and (b)(4). During the deposition, plaintiff's counsel invoked Rule 26(b)(4)(C) to resist production of communications between Dr. Alpert and plaintiff's counsel, asserting work-product protection over attorney-expert communications. Alpert Tr., at 15:18–16:1. Plaintiff's counsel further stated that "the only things that you're entitled to are what's permitted under Rule 26(b)(4)(C)." *Id.* at 133:5-7. If Dr. Alpert or plaintiff's counsel opposes this Motion by arguing that the Subpoena exceeds the bounds of permissible expert discovery under Rule 26(b)(4), the issuing court is likely better positioned to evaluate that argument. The Western District of Tennessee has been managing the scope of expert discovery in this case—including the adequacy of plaintiff's expert disclosures under Rule 26(a)(2), the completeness of Dr. Alpert's materials-reviewed list, and the interplay between expert communications and work-product protections. A compliance court unfamiliar with the Underlying Action would need to reconstruct the expert disclosure history, review the scheduling order, and parse the scope of the expert report to resolve any such defense—all matters squarely within the issuing court's institutional knowledge.

Moreover, the Subpoena's requests for communications relating to compensation, scheduling, facts, data, and assumptions target precisely the categories of information that are excepted from the limited work-product protection of Rule 26(b)(4)(C). See Fed. R. Civ. P. 26(b)(4)(C)(i)–(iii). Determining the boundary between protected and non-protected expert communications in this case requires familiarity with the expert discovery record—familiarity that only the issuing court possesses.

2.     Plaintiff's Counsel Is Directly Entangled in the Noncompliance

Dr. Alpert's noncompliance cannot be evaluated in isolation from the conduct of plaintiff's counsel. The deposition record reveals a pattern of entanglement. When asked whether he brought documents responsive to the Subpoena, Dr. Alpert testified that plaintiff's counsel instructed him simply to "bring what you can." Alpert Tr., 21:15-21. When the City requested Dr. Alpert's prior reports authored for Romanucci and Blandin—the very firm representing plaintiff—Mr. Levin responded, "We'll consider it and get back to you." *Id.* at 34:18-25. Plaintiff's counsel produced a limited set of email communications bearing Bates numbers on Dr. Alpert's behalf, but Dr. Alpert confirmed he did not provide those to counsel for production, and the production was plainly incomplete. *Id.* at 127:16–128:9.

These facts raise serious questions about whether plaintiff's counsel coached Dr. Alpert's responses to the Subpoena, selectively produced documents to control the narrative, or is independently obstructing the City's discovery efforts. The Western District of Tennessee is uniquely positioned to evaluate these issues because it has supervisory authority over plaintiff's counsel as officers of that court. This Court, while fully competent to enforce the Subpoena against Dr. Alpert, cannot exercise the same authority over plaintiff's counsel, who are not before it. To the extent the City's remedy lies in part against the parties—through sanctions, adverse inference instructions, or orders directed at counsel—only the issuing court can grant that relief.

3.     The City's Pending Motion to Reopen Discovery Creates Overlapping Issues.

On April 13, 2026, the City filed a Motion to Reopen Discovery for a Limited Purpose and to Amend Scheduling Order in the Western District of Tennessee. *RowVaughn Wells v. City of Memphis, et al.*, No. 2:23-cv-02224-SHL-atc, Dkt. 611 (W.D. Tenn.). That motion is directly relevant to the relief sought here. In the Motion, the City detailed a cascade of discovery failures

14

and scheduling obstacles that bear directly on the subpoena enforcement dispute, including that plaintiff's Rule 26(a)(2) disclosures are deficient. Among other things, plaintiff has failed to produce communications with her expert witnesses as sought in the City's Request for Production Nos. 29 and 30. *Id.*

The City's Motion to Reopen Discovery (ECF No. 611) and the instant Motion to Compel are two aspects of a single problem: the City's inability to obtain the expert discovery materials to which it is entitled. The issuing court is already considering whether plaintiff's discovery conduct warrants intervention. Resolution of the Subpoena dispute in this Court, in parallel with the issuing court's adjudication of the Motion to Reopen Discovery, risks inconsistent rulings and duplicative litigation. Consolidating these overlapping issues before a single court—the court that is already managing the case and the discovery schedule—serves the interests of judicial economy and consistency.

4.  The Issuing Court Possesses Extensive Familiarity with the Parties' Discovery Disputes.

The Underlying Action has been marked by protracted and contentious discovery disputes that provide essential context for evaluating Dr. Alpert's noncompliance. The Western District of Tennessee has presided over multiple status conferences, motions to compel, and orders addressing the parties' discovery conduct. For example, on March 31, 2026, the court entered an order granting in part and denying in part the City's motions to compel production pursuant to subpoenas and the City's motion to compel plaintiff's discovery responses. *RowVaughn Wells v. City of Memphis, et al.*, No. 2:23-cv-02224-SHL-atc, Dkt. 609 (W.D. Tenn.). The court has observed plaintiff's pattern of dilatory conduct firsthand, including the late disclosure of witnesses, the concealment of a second autopsy, and the failure to supplement written discovery responses.

This institutional knowledge is directly relevant to the instant Motion. Dr. Alpert's

15

wholesale noncompliance with the Subpoena does not exist in a vacuum—it is part of a broader pattern of resistance to the City's expert discovery efforts that the issuing court has been monitoring and addressing. The compliance court, while fully capable of ordering Dr. Alpert to produce documents, lacks the context it may desire to evaluate whether the noncompliance reflects a coordinated strategy between Dr. Alpert and plaintiff's counsel, whether remedial measures beyond document production are warranted, and how any production order should be coordinated with the evolving discovery schedule in the Underlying Action.

Accordingly, should this Court conclude that the foregoing considerations rise to the level of "exceptional circumstances" under Rule 45(f), the City requests transfer of this Motion to the Western District of Tennessee.

## IV.    CONCLUSION

For these reasons, the City of Memphis respectfully requests that the Court enter an order: (1) compelling Dr. Alpert to produce all documents responsive to the subpoena *duces tecum* served upon him on April 14, 2026, including all categories of documents identified in Exhibit A thereto; and (2) granting such other and further relief as this Court deems just and proper. Alternatively, the City of Memphis requests that the Court consider transferring this Motion to Compel to the United States District Court for the Western District of Tennessee, Western Division for resolution, pursuant to Federal Rule of Civil Procedure 45(f).

16

Respectfully submitted,

**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.**

/s/ J. Boone Aiken, IV

J. Boone Aiken, IV (Fed Id No. 13675)
850 Morrison Drive, Suite 775
Charleston, SC 29403
(854) 214-5900
baiken@bakerdonelson.com

May 8, 2026
Charleston, South Carolina

*Attorney for Movant-Defendant City of Memphis*

17